**In re B.J. WADE, S.S. No. XXX–XX–XXXX, Debtor.**

**Glassman, Edwards, Wyatt, Tuttle & Cox, P.C., Plaintiff,**

**v.**

**B.J. Wade, the above-named Chapter 7 Debtor, Defendant.**

**Bankruptcy No. 13–21432–K.
Adversary Nos. 13–00197, 13–00208.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Signed Dec. 15, 2014.

Filed Dec. 16, 2014.

---

**34.** Village Green's Opening Br. 25.

**35.** 11 U.S.C. § 362(d).

**36.** *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

David Wade, Esq., Adam J. Eckstein, Esq., Russell W. Savory, Esq., Memphis, TN, Attorneys for B.J. Wade.

E. Franklin Childress, Jr., Esq., M. Ruthie Hagan, Esq., Memphis, TN, John A. Day, Esq., Brentwood, TN, Attorneys for the Law Firm.

James E. Bailey, III, Esq., Lynda F. Teems, Esq., Memphis, TN, Attorneys for Chapter 7 Trustee.

Karen P. Dennis, Trial Attorney, Memphis, TN, U.S. Trustee for Region 8.

## MEMORANDUM AND ORDER RE DEFENDANT'S "MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING RESOLUTION OF ARBITRATION" COMBINED WITH RELATED ORDERS AND NOTICE OF THE ENTRY THEREOF

### INTRODUCTION

DAVID S. KENNEDY, Chief Judge.

Prior to the filing of this voluntary Chapter 7 case, the plaintiff, Glassman, Edwards, Wyatt, Tuttle, & Cox, P.C. (the "Law Firm"), filed a civil action complaint seeking damages against the defendant, Mr. B.J. Wade, ("Mr. Wade"), the above-named Chapter 7 debtor, in Shelby County Tennessee Chancery Court ("State Court") alleging primarily that Mr. Wade, a former employee, shareholder, and officer of the Law Firm, operated a "shadow law firm" thereby intentionally breaching, among other things, his fiduciary duty to the Law Firm resulting in conversion and conspiracy charges. Mr. Wade responded by filing a motion in the State Court seeking to dismiss the Law Firm's complaint or in the alternative to compel arbitration (the "Motion to Compel Arbitration").[1]

After Mr. Wade voluntarily commenced this Chapter 7 case, the Law Firm timely removed its lawsuit against Mr. Wade from the State Court to this bankruptcy court, being Adv. Proc. No. 13–00197 (the "Removed Claim"). See 28 U.S.C. § 1452(a); FED. R. BANKR.P. 9027(a); FED. R. BANKR.P. 7001(10). This removal procedure utilized by the Law Firm had the

---

1. Interestingly, it is usually the asserted creditor, not the debtor, who seeks to compel arbitration.

byproduct effect of also removing to the bankruptcy court Mr. Wade's Motion to Compel Arbitration. Now, as a preliminary matter to resolving the Removed Claim, the bankruptcy court will firstly address and resolve Mr. Wade's Motion to Compel Arbitration.

This proceeding involving litigation between the Law Firm and Mr. Wade squarely addresses the statutory tension and obvious inherent conflict of coequal federal statutes: the Federal Arbitration Act ("FAA"), infra, and the Bankruptcy Code. A statutory clash clearly exits here between the underlying purposes of these two coequal federal statutes that do not reference one another or specify how they are to interact. Generally speaking, such federal statutory and contractual claims indeed are subject to arbitration if requested by a party, unless Congress intended to preclude waivers of judicial remedies or an inherent conflict exists between arbitration and another federal statute (e.g., the Bankruptcy Code).[2]

It is expressly noted that numerous threshold questions may/must be litigated when the underlying arbitration agreement itself is in dispute: (1) the validity and enforceability of the arbitration agreement; (2) whether the FAA applies to the arbitration agreement; (3) whether the FAA or State law applies to the specific issue(s); (4) whether relevant provisions of the FAA conflicts with the relevant provisions of the Bankruptcy Code; (5) whether contract defenses apply; (6) whether the parties expressly agreed to arbitrate arbitrability; (7) what other issues the parties agreed to arbitrate; and (8) whether the federal bankruptcy court should exercise sound discretion under the existing facts and circumstances of a particular case.

It also is noted that under some circumstances, the immediate parties conceivably, and unfortunately, could litigate more over the threshold arbitration questions than the actual underlying legal dispute itself. The bankruptcy court should exercise its discretion with great care to assure that the threshold arbitration dispute is appropriately resolved in the most just, speedy, and inexpensive manner as possible.[3] Sometimes, this means compelling arbitration, while at other times arbitration may only frustrate the judicial process and should be avoided. Here, the bankruptcy process provides the bankruptcy court and also the immediate parties (and other parties in interest, e.g., the U.S. trustee, Chapter 7 trustee, and creditors) a wider latitude than is provided outside of bankruptcy in that a centralized forum is available to analyze and address *all* the factors and issues and concomitantly to make the most just, speedy, and economic decisions.

Accordingly and for all the reasons discussed below, the court finds under the particular facts and circumstances and applicable law of this case and proceeding that the FAA should not be applied. Therefore, the bankruptcy court exercises discretion and denies Mr. Wade's Motion to Compel Arbitration.

### Procedural History

Mr. Wade commenced this Chapter 7 case by voluntarily filing a liquidating

---

**2.** For an excellent discussion of the Federal Arbitration Act and Bankruptcy Code dichotomy/tension and the enforceability of arbitration clauses in bankruptcy cases and proceedings, *see* Alec P. Ostrow, Classification of Core Proceedings for Purposes of Determining the Authority of Bankruptcy Judges and the Enforceability of Arbitration Clauses: the "Hard Core" and the "Soft Core," 2013 Ann. Surv. of Bankr.Law 3 (2013); *see also, among others, In re Mintze,* 434 F.3d 222, 230 (3rd Cir.2006).

**3.** Cf. the bankruptcy court judicial goal set forth in FED. R. BANKR.P. 1001.

Chapter 7 bankruptcy petition on February 10, 2013. The U.S. trustee for Region 8 ("U.S. Trustee") appointed Lynda F. Teems, Esquire ("Trustee"), as the Chapter 7 trustee (i.e., the § 323(a) statutory representative) of this § 541(a) estate. As noted earlier, shortly after the filing of this Chapter 7 case, the Law Firm filed a notice of removal of the State Court action that removed its pre-bankruptcy lawsuit (i.e., the Removed Claim) against Mr. Wade from the State Court to this bankruptcy court, being Adv. Proc. No. 13–00197.[4] At the time of the removal action, the parties had made very little progress towards resolving the merits of the Removed Claim because discovery disputes arose regarding arbitration that actually proceeded on appeal to the Tennessee Supreme Court. At the time of Mr. Wade's voluntary Chapter 7 bankruptcy case filing, the issue had been submitted to the Tennessee Supreme Court by the parties, but the Tennessee Supreme Court had not yet issued its decision. In addition to timely removing the State Court lawsuit, the Law Firm also filed in the bankruptcy court an independent and separate adversary proceeding pursuant to FED. R. BANKR.P. 7001(6) seeking to determine the dischargeability of its particular asserted claims against Mr. Wade under 11 U.S.C. § 523(a)(2), (4), and (6), being Adv. Proc. No. 13–00208 (the "Dischargeability Claim").

Mr. Wade then filed a motion asking the bankruptcy court to abstain under 28 U.S.C. § 1334(c) and FED. R. BANKR.P. 5011 from hearing both the Removed Claim and the liability portion of the Dischargeability Claim and also to remand the Removed Claim back to the State Court under 28 U.S.C. § 1452(b) and FED. R. BANKR.P. 9027(d). Furthermore, Mr. Wade additionally sought relief under § 362(d)(1) from the automatic stay to allow the Tennessee Supreme Court to issue its judicial opinion on the pending State Court appeal and further to allow the State Court to proceed onto the questions related to arbitration. Both the Trustee and the Law Firm sought to conduct FED. R. BANKR.P. 2004 examinations of Mr. Wade. Mr. Wade, in return, sought to quash the Law Firm's Rule 2004 examination and to obtain a protective order regarding the Trustee's Rule 2004 examination.

On March 21, 2013, the bankruptcy court granted limited relief from the § 362(a) automatic stay to allow the Tennessee Supreme Court to issue its opinion, which ultimately limited the discovery questions before the State Court to the questions regarding arbitration. On August 13, 2013, the bankruptcy court resolved all of the other immediate proceedings in a consolidated order (the "August 13, 2013 Order") as follows: First, the bankruptcy court consolidated both bankruptcy adversary proceedings, Adv. Proc. Nos. 13–00197 and 13–00208, pursuant to FED. R. BANKR.P 7042 and FED.R.CIV.P. 42. The bankruptcy court, among other orders, denied Mr. Wade's motions for proceeding abstention under 28 U.S.C. § 1334(c) and remand under 28 U.S.C. § 1452(b) and fashioned a Rule 2004 examination procedure that allowed the Trustee to conduct her sought for Rule 2004 Exam with the Law Firm "observing." The effect of this order was, in reality, to consolidate the Removed Claim and the Dischargeability Claim and keep all proceedings between these parties at this time in the bankruptcy court and, thereby, centralize all proceedings related to the administration of the case and estate of Mr. Wade into one forum—the

---

4. See 28 U.S.C. § 1452(a) and FED. R. BANKR.P. 9027(a).

bankruptcy court. *Compare* FED. R. BANKR.P. 1001. The August 13,2013 Order was promptly appealed by Mr. Wade and is currently pending in the United States District Court of the Western District of Tennessee. The bankruptcy court denied Mr. Wade's request for a stay pending appeal and later denied his request for this court to reconsider its August 13, 2013 Order's procedure regarding the Rule 2004 examination.

Now, after over a year and a half of preliminary litigation in the bankruptcy court, the bankruptcy court finally comes to wrestle with the crux of the threshold issue and preliminary litigation involving these parties—the question of arbitration. Mr. Wade seeks, through his removed Motion to Compel Arbitration, to dismiss the Law Firm's complaint or to compel arbitration in the Removed Claim adversary proceeding. The Law Firm objects and, instead, seeks to have the bankruptcy court also try on the merits the Removed Claim (as well as the § 523(c) Dischargeability Claim).

### Mr. Wade's Motion to Dismiss Adv. Proc. No. 13–00197

The court notes that Mr. Wade's instant Motion to Compel Arbitration also seeks to dismiss the Law Firm's complaint pursuant to TENN. R. CIV. P. 12.02, which materially mirrors FED. R. BANKR.P. 7012 and FED.R.CIV.P. 12. The bankruptcy court proceeds to resolve this motion under the now applicable Federal Rules of Civil Procedure/Federal Rules of Bankruptcy Procedure. In the August 13, 2013 Order, the bankruptcy court determined that the Removed Claim was a core proceeding in accordance with 28 U.S.C. § 157(b) and that the bankruptcy court has jurisdiction, both statutorily and constitutionally, to hear and determine both the Removed Claim and the Dischargeability Claim (also

a core proceeding), subject to the traditional appellate process.

This court, having reviewed the instant complaint in its entirety and the case records as a whole, finds and concludes that the Law Firm's Removed Claim appears plausible on its face such that it should survive, at the least, Mr. Wade's motion to dismiss. It is respected that "[i]n determining whether a party has failed to state a claim, we construe the complaint in the light most favorable to the non-moving party and accept all factual allegations as true. To survive a Rule 12(b)(6) motion to dismiss, a complaint need contain only enough facts to state a claim to relief that is plausible on its face." *Federal–Mogul U.S. Asbestos Personal Injury Trust v. Continental Casualty Co.*, 666 F.3d 384, 387 (6th Cir.2011) (citations and quotations omitted). Here, if the Law Firm's factual allegations against Mr. Wade are true by a preponderance of the evidence, the Law Firm, no doubt, would be entitled to relief in the form of liability and damages. Accordingly, the court denies Mr. Wade's motion to dismiss the complaint and now proceeds to address and resolve the issue of arbitration.

### Mr. Wade's Motion to Compel Arbitration

Mr. Wade, inter alia, asserts that the arbitration clauses in the Law Firm's Shareholders Agreement and his Employment Agreement require the Removed Claim to be decided through the contractual arbitration procedure detailed in the purported agreements of the parties. In response, the Law Firm alleges, inter alia, that both agreements including the arbitration clauses were fraudulently induced by Mr. Wade; that the Employment Agreement is unexecuted; that the Removed Claim is outside the scope of the arbitration clauses; and that the bankruptcy court should exercise its sound discre-

tion to deny Mr. Wade's Motion to Compel Arbitration.

This court acknowledges that the arbitration issue here is multifaceted and also somewhat complex. The court faces several questions that need resolving. For example: 1) whether, as a threshold matter, a valid enforceable arbitration clause actually exists; 2) whether the arbitration clauses were fraudulently induced; 3) whether the FAA under the circumstances requires arbitration to be compelled; and 4) whether this court should discretionarily compel or deny arbitration. The first two questions are primarily factual questions that will require traditional discovery and possible subsequent evidentiary hearings; whereas, the latter two questions are merely legal questions that can be resolved without the necessity of an evidentiary hearing. On September 18, 2014, the court bifurcated the four questions and held a hearing to resolve the latter two legal questions and reserved the first two questions for a later time, if meaningful to address at such a later time. This bifurcation was done with practicality in mind. The first two factual questions involve numerous disputes over discovery and other evidentiary matters that will take some time to resolve and that are hotly contested issues of fact. In contrast, the latter two legal questions perhaps can be resolved timely and relatively easily. Resolution of the latter two questions may eliminate the need to even engage in discovery and evidentiary hearings regarding the first two factual questions.

Now, the court acts to resolve the latter two legal questions. The bankruptcy court faces a classic bankruptcy situation: namely, competing and countervailing interests

and issues involving statutory tension and conflicts among multiple parties (i.e., the Law Firm, the U.S. Trustee, the Trustee, and creditors) with distinct and varying, but intertwined interests and claims against Mr. Wade and the § 541 property of the estate. It is noted that the § 362(a) automatic stay is in place; therefore, all interested entities have come to this centralized bankruptcy forum seeking, among other things, relief and distributions from the bankruptcy estate. The court now proceeds to determine whether the bankruptcy court has discretion to compel arbitration under a totality of the existing facts and circumstances and applicable law and, if so, whether that discretion should be exercised. For purposes herein, the bankruptcy court assumes, but does not expressly find, that the arbitration clauses in the Shareholders Agreement and Employment Agreement are valid and not subject to a contract defense of fraudulent inducement.[5]

### General Application of the Federal Arbitration Act

■ Congress passed the FAA in 1925.[6] The FAA provides that a written arbitration agreement in "a contract evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In essence, for the FAA to apply to the arbitration agreement in question, the agreement must (1) be in writing, (2) involve interstate commerce, and (3) withstand contract defenses.

The first question that must be addressed here is whether the arbitration agreement relates to a transaction involving commerce. The Supreme Court has

---

**5.** The court reserves the questions that relate to the validity of the arbitration clauses until such time, if any, that they become meaningful.

**6.** Act Feb. 12, 1925, c. 213, § 2, 43 Stat. 883, codified as title 9, §§ 1–16.

interpreted the phrase "involving commerce" very broadly indicating that Congress' intent is to exercise its Commerce Clause powers to its fullest. *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 273–75, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Specifically asked to address whether most employment contracts are governed by the FAA, the Supreme Court held that all employment contracts, except for transportation employment contracts exempted under 9 U.S.C. § 1, are subject to the FAA because they are contracts involving commerce. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

■ The FAA does not create federal subject matter jurisdiction, as parties must still assert an independent basis for federal jurisdiction such as diversity jurisdiction or a federal question. However, the FAA creates "a substantive rule applicable in state as well as federal courts." *Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Thus, the FAA via the Supremacy Clause preempts

any contrary state law that limits the enforceability of arbitration agreements under the FAA. *Nitro–Lift Technologies, L.L.C v. Howard,* —— U.S. ——, 133 S.Ct. 500, 184 L.Ed.2d 328 (2012) (per curium). Both state courts and federal courts are required to enforce arbitration agreements consistent with the FAA. The FAA preemption is not meant to cover the field but rather only applies to conflicting law. Therefore, enforceability of arbitration agreements is most commonly governed by the FAA while the procedure for arbitration is governed by state law, which ordinarily is very deferential to the written arbitration agreement.

■ Here, the court follows the Supreme Court's decision in *Circuit City Stores, Inc. v. Adams, supra,* and holds that Mr. Wade's Employment Agreement and the Shareholders Agreement involve commerce and, thus, the decision on whether to compel is governed by the FAA and not Tennessee State law.[7]

## FAA Applicability in Bankruptcy

7. Though not necessary for today's holding because the bankruptcy court is assuming for argument the validity of the subject arbitration clauses, the court notes this finding that the FAA applies and not Tennessee State law has other implications. Section 2 of the FAA clearly expresses that ordinary contract defenses may cause an arbitration agreement to be voided or revoked. Such contract defenses include, among others, unconscionability, fraud, duress, and fraud in the inducement. The Supreme Court held that, for the trial court to consider contract defenses, the contract defenses must directly affect the arbitration agreement itself and not the contract as a whole. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). This creates an awkward procedure where the trial court must separate the arbitration clause from the contract as a whole and treat it as if it is an independent standalone contract for determining whether contract defenses apply. If

contract defenses do not apply to the separated arbitration agreement, arbitration must be compelled. The arbitrator then will determine whether contract defenses such as fraud in the inducement affect the contract and claim. Contrarily, if contract defenses do apply to the arbitration agreement, arbitration cannot be enforced because a valid arbitration agreement no longer exists and the trial court will decide the contract and claim at issue. This *Prima Paint* methodology is inconsistent with the Tennessee state law approach. In Tennessee, the trial court makes all determinations regarding contract defenses that affect the validity and enforceability of the arbitration agreement and/or the contract as a whole. There is no fictional separating of the arbitration agreement from the contract as a whole. Though the Tennessee approach makes common and practical sense, the Tennessee approach is preempted by *Prima Paint.*

Congress enacted the FAA[8] thereby establishing a federal policy favoring arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (*citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The FAA ordinarily requires federal courts to rigorously enforce arbitration agreements, and this enforcement is not diminished when a claim is founded on a statutory right. *Id.* (*citing Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). The FAA mandates enforcement of arbitration agreements regarding statutory claims; however, "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Id.* The party opposing arbitration is burdened to show that Congress intended to limit or prohibit arbitration of a particular claim in a judicial forum by one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) an inherent conflict between the arbitration and the statute's underlying purposes. *Id.* at 227, 107 S.Ct. 2332 ("McMahon Framework").

If the statute's text or legislative history suggest a limitation or prohibition of the FAA, the strict enforcement of the arbitration agreement is undone. However, where there is no statutory text or legislative history on topic, the court must determine whether there is an inherent conflict between the purposes of the two acts. If an inherent conflict is determined to exist, the court has discretion regarding whether to compel arbitration; however, if no inherent conflict exists, the court cannot exercise discretion and must compel arbitration. *In re Mintze*, 434 F.3d 222, 228 (3rd Cir.2006) (citing *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156 (3rd Cir.1989)).

The majority of courts have determined that Congress did not include statutory text or legislative history that expressly limited the FAA's application to the Bankruptcy Code. *See, for example, In re Mintze*, 434 F.3d 222 (3rd Cir.2006); *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3rd Cir. 1989); *In the Matter of Nat'l Gypsum Co.*, 118 F.3d 1056 (5th Cir.1997); *In the Matter of Eber*, 687 F.3d 1123 (9th Cir.2012); *In the Matter of Thorpe Insulation Co.*, 671 F.3d 1011 (9th Cir.2012); *In re Electric Machinery Enterprises, Inc.*, 479 F.3d 791 (11th Cir.2007). The Sixth Circuit apparently has not been presented with this issue and the Second and Fourth Circuits seemingly have avoided addressing this issue by skipping the first two prongs of the McMahon Framework and going directly to the inherent conflict prong. *See In re United States Lines, Inc.*, 197 F.3d 631 (2nd Cir.1999); *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104 (2nd Cir.2006); *In re White Mtn. Mining Co., L.L.C.*, 403 F.3d 164 (4th Cir.2005).

Yet, by application of Sixth Circuit precedent, the Bankruptcy Code's text may very well limit the application of the FAA. Several Sixth Circuit cases that preceded the Supreme Court's holding in *McMahon* held that "whether the bankruptcy court should surrender its jurisdiction to another tribunal involved the exercise of judicial discretion." *In the Matter of Muskegon Motor Specialties Co. ("Muskegon")*, 313 F.2d 841, 842 (6th Cir.1963) (*citing Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876 (1940); and, also, *Mangus v. Miller*, 317 U.S. 178, 186, 63 S.Ct. 182, 87 L.Ed. 169 (1942)); *see also In re F & T Contractors,*

8. 9 U.S.C. § 1 *et seq.* (2002).

*Inc.*, 649 F.2d 1229 (6th Cir.1981). These courts determined that the bankruptcy laws and related jurisdictional texts (see, now, 28 U.S.C. § 1334(e)(1)) limited the FAA, specifically as concerns exclusive jurisdiction over property of the estate in *Muskegon* and the claims allowance process in *F & T Contractors*.

At least one court addressed whether *McMahon* overruled *Muskegon* and *F & T Contractors*; however, that court's reasoning is not persuasive.[9] The Sixth Circuit decisions are not inconsistent with the holding in *McMahon*. The statutory text of the Bankruptcy Code and the relevant and related title 28 provisions, specifically, 28 U.S.C. §§ 1334(e)(1) and 157, limit the FAA's application in the bankruptcy context.

In *Muskegon*, the Sixth Circuit held that the bankruptcy court's exclusive jurisdiction over property of the debtor should not be surrendered except under "exceptional circumstances." *Muskegon*, 313 F.2d at 842 (6th Cir.1963). The court extended its exclusive jurisdiction to the allowance and determination of claims against the bankruptcy estate. *Id.* Thus, a claim dispute, otherwise subject to arbitration, could be resolved by a bankruptcy court exercising its exclusive jurisdiction. "The res was in custodia legis." *Id.* at 843. It found that a private contract for arbitration cannot remove a bankruptcy court's jurisdiction over the bankruptcy estate and its related claims. *Id.* The Sixth Circuit's holding is consistent with Supreme Court precedent that recognizes that a legal claim changes upon the filing for bankruptcy.[10] Thus, the *Muskegon* holding appears to align with *McMahon* in that the 6th Circuit used the statutory text and legislative history of the Bankruptcy Act of 1898 and determined that Congress intended that the bankruptcy courts should have discretion on questions of arbitration.

Although *Muskegon* was decided under the former Bankruptcy Act of 1898, the exclusive jurisdiction of the bankruptcy court remains applicable under current 28 U.S.C. § 1334(e)(1).[11] The Bankruptcy Act of 1898 provided "exclusive jurisdiction of the debtor and its property, wherever located." *In re Muskegon Motor Specialties Co.*, 313 F.2d 841, 842 (6th Cir.1963) (quoting the Bankruptcy Act of 1898, Chapter X, 11 U.S.C. § 511 (1963)). Section § 1334(e)(1) of title 28 today provides "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). The statutory text from the Bankruptcy Act of 1898 relied on by the *Muskegon* court is substantially the same as the current bankruptcy jurisdictional statutes and, indeed, has only been broad-

---

9. *In re Trinity Communications, LLC*, 2012 WL 1067673, *14 (Bankr.E.D.Tenn. Mar. 14, 2012) (*McMahon* overruled *Muskegon* and *F & T Contractors*); *see also In re Hermoyian*, 435 B.R. 456 (Bankr.E.D.Mich.2010) (applying the McMahon framework but not specifically overruling).

10. *Katchen v. Landy*, 382 U.S. 323, 337, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (quoting *Barton v. Barbour*, 104 U.S. 126, 134, 26 L.Ed. 672 (1881) ("So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in

respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt of damages against the bankrupt is investigated by chancery methods.")).

11. Section 1334(e)(1) of title 28 gives the "district court" exclusive jurisdiction. However, this exclusive jurisdiction is referred to the bankruptcy courts by standing orders. See 28 U.S.C. § 157(a); see also, e.g., Miscellaneous Order No. 84–30 (W.D.Term.1984).

ened under the current bankruptcy statutes; thus, the logic and intent of the "exclusive jurisdiction" language discussed in *Muskegon* extends to today's application. "[W]here ... Congress adopts a new law ... [it] normally can be presumed to have had knowledge of the interpretation given to the [old] law." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 211, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (quoting *Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)).

■■■■ "Exclusive" jurisdiction is distinct from "concurrent," "ancillary," or "supplemental" jurisdiction. Congress' use of the word "exclusive" implies that the bankruptcy court may hear and determine proceedings regarding property of the estate to the exclusion of other adjudicators, including arbitrators. Unlike 28 U.S.C. § 1334(a) which is limited by 28 U.S.C. § 1334(b) in that the bankruptcy court is granted "original but not exclusive" jurisdiction in certain circumstances, section 1334(e)(1) of title 28 is not limited in any way. The bankruptcy court has exclusive jurisdiction over property of the debtor and property of the estate, wherever located. "Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction." *Central Virginia Community College v. Katz*, 546 U.S. 356, 369–70, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006). "The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res." *Gardner v. New Jersey*, 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947). "[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (quoting and citing *Granfinanciera,*

*S.A. v. Nordberg*, 492 U.S. 33, 58–59, n. 14, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).

Congress could have chosen to provide exceptions, perhaps even an arbitration exception, to the bankruptcy courts' exclusive jurisdiction under 28 U.S.C. § 1334(e)(1), but it clearly did not. As will be discussed later under the inherent conflict prong, the policy behind this exclusive jurisdiction, wherever located, is to assure than all property of a title 11 debtor and claims against a debtor are resolved in centralized and orderly proceedings to assure a debtor's fresh start and concomitantly foster, among other things, a fair and equitable distribution and treatment among the debtor's creditors. This court finds, considering a totality of the particular facts and circumstances, that the clear and express language of 28 U.S.C. § 1334(e)(1) was intended by Congress to exclude any adjudicators other than the bankruptcy court from exercising control over property of the estate and resolving claims against property of the estate absent the bankruptcy court's approval. This determination gives the bankruptcy court under the facts and circumstances existing in this case the discretionary power to determine whether to compel or deny arbitration.

Aware that the majority of cases contrarily found that the Bankruptcy Code and its related jurisdictional provisions do not satisfy the first *McMahon* prong by limiting the FAA through its statutory text, the court also will consider the inherent conflict prong of *McMahon*. Resolving the inherent conflict prong as well as other prongs allows for a complete case record if an appeal of this order is to be taken and it later determined that *McMahon* did indeed overrule *Muskegon* and *F & T Contractors*.

■■■■ Congress passed the Bankruptcy Code primarily for two underlying pur-

poses: first, to give the honest but unfortunate debtor a fresh start in life and, second, to fairly and equitably distribute the debtor's property to creditors holding valid and allowed claims. *Burlingham v. Crouse*, 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920 (1913); *see also Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918); *Kokoszka v. Belford*, 417 U.S. 642, 645–46, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). To carry out these underlying purposes, Congress created bankruptcy courts with judges having jurisdiction to hear and determine all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11. 28 U.S.C. § 157(a). Furthermore, a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11 and may determine that proceeding with consent of all the parties or, absent consent, may issue a finding of fact and conclusions of law to be reviewed *de novo* by the district court. 28 U.S.C. § 157(c)(2); FED. R. BANKR.P. 9033(d).

To protect this jurisdiction, Congress created the bankruptcy estate under 11 U.S.C. § 541, which serves to centrally aggregate all of the debtor's legal or equitable interest in property, wherever located and by whomever held, and also created the automatic stay provisions under 11 U.S.C. § 362(a), which operate as a stay against most actions against the debtor, the debtor's property, and § 541 property of the estate. By aggregating the debtor's property and staying most actions against the debtor and its property, Congress created a centralized bankruptcy forum for creditors to submit claims and have these claims heard, determined and allowed or disallowed. 11 U.S.C. § 502. The bankruptcy court is uniquely positioned to equitably balance the competing and countervailing interests of multiple

parties in pursuit of the debtor's fresh start and the fair and equitable distribution of the estate's general funds to creditors. *See for example and among others, In re F & T Contractors, Inc.*, 649 F.2d 1229 (6th Cir.1981) (holding the bankruptcy judge did not abuse discretion by refusing to submit contract disputes to arbitration).

The Bankruptcy Code and FAA have separate and distinct Congressional purposes. Bankruptcy policy seeks to aggregate parties, property, and claims; whereas, arbitration, by removing a specific claim between the debtor and a specific creditor, may inherently disrupt the bankruptcy and claims allowance processes by adding, for example, costs, time, and frustration. The FAA forwards its purpose of favoring arbitration by placing arbitration agreements upon the same footing as other contracts. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). Where parties enter into a valid and enforceable arbitration agreement, federal courts should ordinarily bind those parties to their agreement. This policy makes sense in two-party disputes and even in proper class action disputes because arbitration can serve to expedite resolution of the claim while reducing litigation costs and, also, because arbitrators may bring a special expertise to resolving the claim. These benefits of arbitration in two-party disputes and proper class actions do not necessarily extend to bankruptcy cases and the multi-party nature of bankruptcy cases. "There will be occasions where a dispute involving both the Bankruptcy Code and the [FAA] presents a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centrali-

zation while arbitration policy advocates a decentralized approach towards dispute resolution." *In re United States Lines, Inc.*, 197 F.3d 631, 640 (2nd Cir.1999) (*citing Societe Nationale Algerienne Pour La Recherche La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp.*, 80 B.R. 606, 610 (D.Mass. 1987)). The purposes of the FAA and the Bankruptcy Code sometimes are in statutory tension; the bankruptcy court is tasked here with determining in this case whether this tension rises to an inherent conflict between the FAA and the Bankruptcy Code's underlying purposes.

▇▇▇▇▇ In determining whether an inherent conflict exists, the nature of the proceeding and whether it is a core or non-core proceeding will impact the court's ultimate determination.

> [G]enerally, bankruptcy judges do not have discretion to refuse to compel arbitration of non-core matters because they are generally only tangentially related to a bankruptcy case. Bankruptcy Courts may, however, exercise discretion to refuse to compel arbitration of core bankruptcy matters, which implicate more pressing bankruptcy concerns. Yet, even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that inherently conflict with the [FAA] or that arbitration of the claim would necessarily jeopardize the objectives of the Bankruptcy Code.

*In the Matter of Eber*, 687 F.3d 1123, 1130, n. 6 (9th Cir.2012) (citations omitted). The distinction between core and non-core provides an initial dividing line on FAA applicability. Furthermore, core proceedings concerning administration of property of the estate, the claims allowance process,

and § 523(a)(2), (4), and (6) dischargeability issues are so fundamental to the bankruptcy case that they should be deemed "hard core" and clearly not subject to the FAA. See 11 U.S.C. § 523(c).

In *In the Matter of Eber* the Ninth Circuit affirmed the lower court decisions not to compel arbitration where the underlying claims also were subject to a dischargeability determination. *In the Matter of Eber*, 687 F.3d 1123 (9th Cir.2012).

> Allowing an arbitrator to decide issues that are so closely intertwined with dischargeability would conflict with the underlying purposes of the Bankruptcy Code. Courts must consider the Bankruptcy Code's objectives, including centralization of disputes concerning the debtor's legal obligations, and protection of debtors and creditors from piecemeal litigation.

*Id.* at 1130–31 (9th Cir.2012) (citations omitted). The purposes of the Bankruptcy Code and related title 28 provisions at issue in *Eber* were in inherent conflict with the FAA because compelling arbitration would undermine the centralization of the disputes and the exclusive bankruptcy jurisdiction regarding dischargeability (and possibly the general discharge under § 727(a)). Under 28 U.S.C. § 157(b)(2)(I), determinations as to the dischargeability of particular debts under 11 U.S.C. § 523(a)(2), (4), and (6) undoubtedly are statutorily illustrated core proceedings that are within the exclusive bankruptcy jurisdiction of the bankruptcy court to hear and determine. *Grogan v. Garner*, 498 U.S. 279, 284 n. 10, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("The 1970 amendments took jurisdiction over certain dischargeability exceptions, including the exceptions for fraud, away from the state courts and vested jurisdiction exclusively in the bankruptcy courts.") (citing *Brown v. Felsen*, 442 U.S. 127, 129–130, 136, 99

S.Ct. 2205, 60 L.Ed.2d 767 (1979)). Likewise, determinations, if called upon to be made, as to Mr. Wade's general discharge are statutorily illustrated core proceedings within the exclusive jurisdiction or the bankruptcy court to hear and determine. 11 U.S.C. § 727(a). See 28 U.S.C. § 157(b)(2)(J). Additionally, the allowance or disallowance of claims is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

Similarly, the facts in *In re Koper*, 516 B.R. 707 (Bankr.E.D.N.Y.2014), decided on September 30, 2014, parallel those found in *Eber, supra*. More specifically, the *Koper* court stated at 516 B.R. at 720–23 as follows:

> Similarly, in *In re Eber*, the Court of Appeals for the Ninth Circuit found that the district court did not abuse its discretion when it affirmed the bankruptcy court's denial of a motion to compel arbitration because granting the motion would have conflicted with the underlying purposes of the Bankruptcy Code. Creditors in *Eber* filed a complaint in the bankruptcy court seeking a determination that the debts owed to them were nondischargeable and alleged in the complaint that the dischargeability of the claims constitute core proceedings. More than three months later, the creditors filed a motion to stay the dischargeability action and compel the debtor to proceed with the prepetition arbitration the creditors had commenced against the debtor. The creditors argued that issues of liability and damages are non-core matters based on New York law and the right to arbitration cannot be denied. As the Ninth Circuit noted, "there is an important distinction between collateral estoppel and *potential* collateral estoppel...and that allowing an arbitrator to decide the issues related to dischargeability...would conflict with important bankruptcy principles." 687 F.3d at 1131 (emphasis in original text).

The facts in this case parallel those found in *Eber*. The Plaintiff commenced the Central District Case prepetition seeking to compel the Debtor to participate in arbitration. After the Debtor's bankruptcy filing, the Plaintiff filed a complaint in this Court seeking to except its claims against the Debtor from discharge under section 523(a)(2), (4), and (6) of the Bankruptcy Code. The Plaintiff admits that the dischargeability action is a core proceeding and involves the same common set of facts as the Arbitration Proceeding.

The Plaintiff argues that the underlying claims in the pending adversary proceeding for which the Plaintiff seeks to hold the Debtor liable are state law based tort and contract law claims. However, a review of the Complaint shows that the underlying claims are based upon fraud, embezzlement and false pretenses that occurred while the Debtor was employed by the Plaintiff. The First Count of the Complaint seeks to have the funds allegedly converted, embezzled and stolen by false pretenses, false representation and/or actual fraud be nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Second Count of the Complaint alleges that the Debtor committed fraud, defalcation, embezzlement and larceny with respect to the Plaintiff's property, including funds and other corporate documents, and the debt arising from such actions is excepted from discharge under 11 U.S.C. § 523(a)(4). Lastly, the Third Count of the Complaint seeks to have the debt also be excepted from discharge under 11 U.S.C. § 523(a)(6) on the basis that by embezzling, converting and stealing of the Plaintiff's funds, the Debtor willfully and maliciously caused damage and injury to the Plaintiff and the Plaintiff's property. There is no allegation of state

law based tort or breach of contract raised in this adversary proceeding.

The Court agrees with *Eber* and [*In re* ] *Zimmerman* [341 B.R. 77 (Bankr. N.D.Ga.2006)] that in the context of section 523(a)(2), (4), and (6) of the Bankruptcy Code the issues of liability, amount of damages and dischargeability are so intertwined that such a separation of issues may not always be feasible. A finding on liability on the Plaintiff's underlying claims by an arbitrator would necessarily involve a finding of fraud, defalcation, or other wrongdoing which would come within the purview of the bankruptcy court's exclusive jurisdiction over the issue of dischargeability of such claims under section 523(a)(2), (4) and (6) of the Bankruptcy Code. While bankruptcy courts in a dischargeability proceeding have given collateral estoppel effect to the findings made by an arbitrator with respect to a prepetition arbitration award, where there is no prepetition arbitration award in place, allowing an arbitrator to decide issues of liability and amount of damages would potentially subsume the dischargeability issue and supplant the bankruptcy court's prerogative to make the determination as to that issue and the issue of the debtor's entitlement to a fresh start. This leaves the bankruptcy court with the role of ratifying a decision made by someone who may or may not have any expertise in bankruptcy and who certainly has no authority under the Bankruptcy Code to make a determination as to dischargeability. Therefore, the issues of liability, amount of damages, and dischargeability should essentially be considered as one proceeding that is "substantially core" to the bankruptcy process. Permitting arbitration to proceed on the underlying claims would conflict with a "substantially core" function of the bankruptcy process and override the congressional mandate given to the bankruptcy court. Having determined that the pending dischargeability proceeding is "substantially core," this Court has discretion to refuse to enforce the arbitration agreement. "In *U.S. Lines* and *MBNA,* the Second Circuit clearly articulated that in certain core bankruptcy proceedings that severely conflict with the Federal Arbitration Act, the court has discretion to deny arbitration." *In re Bethlehem Steel Corp.,* 390 B.R. 784, 794 (Bkrtcy. S.D.N.Y.2008).

In this case, the Court exercises its discretion not to stay the adversary proceeding in favor of arbitration. Aside from the potential collateral estoppel effect that a determination by an arbitrator would have on this adversary proceeding, there are two other adversary proceedings pending before this Court involving a common set of facts and law and the same parties which may be impacted. Even if the arbitrator does not render such findings on the issue of dischargeability, this Court will need to conduct a trial or evidentiary hearing on the very same facts considered by the arbitrator in order to make a determination as to dischargeability. Therefore, not only would there be a waste of judicial resources, but this would also be burdensome on the Debtor and witnesses where litigation is occurring in multiple forums. The Bankruptcy Code's purpose of centralizing all litigation in one forum would be defeated, especially where the Plaintiff and ICB would continue prosecuting the other two nondischargeability proceedings against the Debtor before this Court in New York while concurrently pursuing similar claims in arbitration in California. Accordingly, principles of judicial efficiency and judicial economy dictate that the determination of the issues of

liability, amount of damages and dischargeability be conducted in a single forum rather than severing the various issues. (Citations omitted).

It is noted that in *In re Woods*, 517 B.R. 106 (Bankr.N.D.Ill.2014), decided on August 15, 2014, a former employee of a Chapter 11 debtor moved for relief from the § 362(a) automatic stay pending an underlying pre-bankruptcy arbitration proceeding before the Chicago Board of Trade concerning the employee's industry-related state law claims against the debtor. The court held that the:

(1) Bankruptcy Court could determine the employee's claim as core proceeding, even though the claims had been asserted by the employee in the arbitration proceeding as counterclaims;

(2) Bankruptcy Court had statutory jurisdiction and constitutional authority to determine the employee's claims; and

(3) Judicial economy and efficient administration of the state warranted denial of the employee's motion for relief from automatic stay.

Accordingly, discharge determinations under 11 U.S.C. § 523(a)(2), (4), and (6) expressly are core proceedings within the exclusive jurisdiction of the bankruptcy court.[12] By extension, resolving underlying claims inextricably intertwined with 11 U.S.C. § 523(a)(2), (4), and (6) discharge determinations clearly are core proceedings to be adjudicated exclusively by a bankruptcy court. *See, among others, In re McLaren*, 3 F.3d 958, 966 (6th Cir.1993) ("If it is acknowledged as beyond question

that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt.") (quoting *In re Devitt*, 126 B.R. 212, 215 (Bankr.D.Md.1991)); *see also In re Deitz*, 760 F.3d 1038 (9th Cir.2014) ("Exception to discharge claims arise solely under title 11 and could not exist outside the federal bankruptcy system. Simply put, exceptions to discharge and liquidations of related claims are examples of the bankruptcy courts doing what they are supposed to do.").

In this Chapter 7 case, the Law Firm filed the Dischargeability Claim seeking a determination that its unliquidated and disputed Removed Claim against Mr. Wade is exclusively non-dischargeable under 11 U.S.C. § 523(a)(2), (4), and/or (6). See 11 U.S.C. § 523(c). Underlying this complaint, the Law Firm in the Removed Claim asserts unliquidated and disputed claims for actual and punitive damages for Mr. Wade's intentional breach of fiduciary duties. Here, The Law Firm's Dischargeability Claim under 11 U.S.C. § 523(a)(2), (4), and (6) clearly is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and subject to this bankruptcy court's "exclusive jurisdiction" to hear and determine.

12. See 28 U.S.C. § 157(b)(2)(I). It is emphasized that some core proceedings are so connected to the proper function of bankruptcy administration that the bankruptcy courts are permitted to override an otherwise valid arbitration clause. *See, e.g., In re U.S. Lines, Inc.,*

197 F.3d 631, 641 (2nd Cir.1999) (enforcement of arbitration clause denied in declaratory judgment proceedings, held to be core and integral to bankruptcy court's ability to preserve and equitably distribute assets).

*Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); 11 U.S.C. § 523(c).

Furthermore, as the court also noted in its August 13, 2013 Order, the Removed Claim is a core proceeding in accordance with 28 U.S.C. § 157(b). Under 28 U.S.C. § 157(b)(2)(B), the allowance and disallowance of claims against the § 541(a) estate also are core proceedings that the bankruptcy court may hear and determine, subject to appeal. Ordinarily, bankruptcy courts exercise concurrent jurisdiction under 28 U.S.C. § 1334(b) regarding the allowance or disallowance of such claims. Under 28 U.S.C. § 1334(c)(1), the bankruptcy court may in appropriate proceedings permissively abstain from hearing a particular liability claim in the interest of justice or in the interest of comity with the state courts or respect for state law. 28 U.S.C. § 1334(b). If the bankruptcy court decides to abstain, the court may provide relief from the § 362(a) automatic stay to allow another jurisdiction to proceed or may remand a removed claim under 28 U.S.C. § 1452(b) and FED. R. BANKR.P. 9027(d).

The determination to hear and decide the allowance or disallowance of a claim is within the sound discretion of the bankruptcy court. 28 U.S.C. § 157(b)(2)(B). The Law Firm's underlying unliquidated and disputed claim against Mr. Wade clearly is a statutorily illustrated core proceeding and the litigation to liquidate and resolve this core claim has been timely and

properly removed from the State Court to this federal bankruptcy court under 28 U.S.C. § 1452(a) and FED. R. BANKR.P. 9027(a). Compare 28 U.S.C. § 1446(a). This court previously denied Mr. Wade's request for abstention under 28 U.S.C. § 1334(c) and remand under 28 U.S.C. § 1452(b) in the August 13, 2013 Order; therefore, the Removed Claim is properly before this bankruptcy court.

In addition to properly being before this court, the Removed Claim is inextricably intertwined with the pending 11 U.S.C. § 523(c) Dischargeability Claim. The above-referenced adversary proceedings are based on the same background actions and will require basically the same fact finding. Resolution of either of these Claims will substantially and materially impact the resolution of the other (and also avoid possible conflicting/inconsistent results of an arbitrator). The *Eber, Deitz,* and *McLaren* courts, among others, recognized that bankruptcy court's the exclusive jurisdiction over dischargeability claims should extend to the liquidation and determination of the underlying claim.[13] This court is faced with exactly the same situation. Mr. Wade seeks to have the Removed Claim determined by an arbitrator while recognizing that the bankruptcy court must exclusively determine the Dischargeability Claim. 11 U.S.C. § 523(c).

Simply put, the Law Firm merely seeks to have the bankruptcy court resolve both Claims in one centralized forum. Under these particular facts, practicality and ap-

---

**13.** Additionally, it is noted that both the U.S. trustee for Region 8 and the Chapter 7 trustee of this § 541(a) estate have sought and obtained orders, pursuant to FED. R. BANKR.P. 4004(b) extending the time to object to Mr. Wade's general discharge under 11 U.S.C. § 727(a). Clearly, a proceeding objecting to a debtor's discharge, as noted earlier, is a statutorily illustrated hard core proceeding under 28 U.S.C. § 157(b)(2)(J) within the exclusive jurisdiction of the bankruptcy court. Query, what impact if any, would an arbitrator's award have on a § 727(a) action filed by the U.S. trustee and/or the Chapter 7 trustee objecting to Mr. Wade's general discharge? The Law Firm would not be a party to such § 727(a) objection to discharge in this case. Ping pong jurisdiction/litigation should be avoided.

plicable law seemingly agree; dischargeability claims and the related, underlying claims (e.g., the claims allowance process) should be resolved together in a centralized forum in order to further justice and a resulting speedy and efficient judicial process without regard to possible conflicting and inconsistent results. Compare FED. R. BANKR.P. 1001. Here, the obvious tension between the Bankruptcy Code and the FAA creates an inherent conflict. A bankruptcy court must be afforded discretion to determine whether to enforce an arbitration clause where doing so could completely disrupt the entire bankruptcy policy of centralization and lead to possible bifurcated and disfigured litigation costs and delays, and conflicting results.

### Exercising Discretion

Exercising discretion means the court may compel arbitration or deny a request to compel arbitration depending on the totality of the particular facts and circumstances surrounding the case and its estate administration. Courts have examined some of the following eight factors when determining whether to compel requests for arbitration:

1) Whether the arbitration proceeding was commenced prepetition;

2) Whether the party seeking arbitration has formally appeared in the bankruptcy case;

3) Whether the arbitrator has special knowledge or expertise which would be helpful to the resolution of the disputed issues;

4) Whether there is a strong likelihood that the debtor will confirm a plan;

5) Whether there is an international arbitration provision;

6) The likelihood of piecemeal litigation;

7) Whether the issue to be arbitrated is core or noncore; and

8) What impact resolution of the issue will have on the bankruptcy estate?

*In re Nu–Kote Holding, Inc.,* 257 B.R. 855, 863 (Bankr.M.D.Tenn.2001) (gathering factors from six other courts). The court now addresses these factors under the particular facts and circumstances of the instant case and instant proceedings.

█ First, Mr. Wade's Motion to Compel Arbitration was filed prepetition but was never finally determined by the State Court. To date, no court has compelled or denied arbitration between Mr. Wade and the Law Firm. This bankruptcy court is now faced with determining whether to compel arbitration in the first instance.

Second, the party seeking to compel arbitration in this case and this proceeding is Mr. Wade, the Chapter 7 debtor; therefore, the party seeking to compel arbitration has appeared in the bankruptcy case and, indeed, voluntarily selected this forum by commencing this bankruptcy case. This factor weighs heavily on this court. Mr. Wade commenced this voluntary bankruptcy case and, by effect, automatically stayed the State Court litigation. See 11 U.S.C. § 362(a). In response, the Law Firm voluntarily removed its State Court claim to the bankruptcy court to allow its claim to be resolved in the bankruptcy claims allowance process and centralized forum. The Law Firm has timely filed a proof of claim, being claim no. 5. Instead of consenting to the centralization of all disputes in this bankruptcy court, Mr. Wade first sought to remand the Removed Lawsuit back to the State Court and now seeks to compel arbitration. Mr. Wade seemingly cannot have it both ways. The Bankruptcy Code cannot be used as both a sword and a shield. By filing his voluntary bankruptcy petition, Mr. Wade essentially consented to the jurisdiction of the bankruptcy court and the protections afforded all title 11 debtors; he cannot avoid

the consequences of a title 11 bankruptcy filing that include, among other things, full disclosure of his financial situation and bankruptcy jurisdiction.

Third, an independent arbitrator in this title 11 case likely will offer no specialized expertise. One of the primary benefits of arbitration is to find an arbitrator that offers expertise regarding disputed factual claims. Where the factual issues are ordinary and the primary disputes are legal, arbitration loses much of its luster. The Removed Claim here regards operation by Mr. Wade of an alleged "shadow law firm." This bankruptcy court readily sits to resolve such disputes. Here, this court foresees nothing that will require specialized non-bankruptcy knowledge.

Factors four and five are inapplicable in this case, so the court proceeds to sixth factor regarding piecemeal litigation. As was discussed earlier, the court seeks to avoid piecemeal or fragmented litigation that would result from bifurcating the Removed Claim from the Dischargeability Claim. Compelling arbitration actually may disrupt and disfigure the bankruptcy administration of this case, estate administration, and these adversary proceedings. This court may have to await an arbitrator's decision rather than proceeding at the case's own natural pace. The findings of the arbitrator on the Removed Claim may be incomplete for purposes of the Dischargeability Claim, which could force the issues to be relitigated. Consideration of issue preclusion (i.e., the doctrine of collateral estoppel) is important here. Issues resolved in arbitration are not likely to be precluded from litigation on the Dischargeability Claim. *See, for example, W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.,* 765 F.3d 625, 632 (6th Cir.2014) (holding that "res judicata yields where the claims sought to be precluded were not subject to the arbitration.").

. Thus, many of the issues to be tried in arbitration would need to be retried in the bankruptcy court. Dueling litigation, which may result in conflicting outcomes and inconsistent application related to the same factual and legal questions, should be avoided. Furthermore, the bankruptcy court and the arbitrator may not agree on, for example, the scope of discovery and create dueling fora for obtaining information and documents. Avoiding piecemeal litigation in the instant case will benefit the administration of the case and estate and assist in achieving the judicial goal set forth in FED. R. BANKR.P. 1001 "to secure the just, speedy, and inexpensive determination of every case and proceeding."

Finally, the court reaffirms its prior discussion that the Removed Claim is in reality a "hard core" bankruptcy proceeding inextricably intertwined with the Dischargeability Claim that is within the exclusive jurisdiction of the bankruptcy court. Furthermore, the Removed Claim is the primary claim against the estate and will drastically impact the administration of the Chapter 7 case and estate. Furthermore, it is not unforeseeable that other actions (e.g., an 11 U.S.C. § 727 objection to discharge, §§ 548(a) and 544(b) fraudulent transfers, and counterclaims and objections to claims) may arise that are related to the Removed Claim and Dischargeability Claim. Hearing and determining the Removed Claim and Dischargeability Claim will best position the bankruptcy court to readily address any other related matters or proceedings that may arise in this bankruptcy case.

## CONCLUSION

Briefly stated, avoiding arbitration here would centralize the adjudication of all claims into one forum and concomitantly accomplish the judicial goal set forth in

Fed. R. Bankr.P. 1001. For all the afore-mentioned reasons, the court exercises its discretion to deny Mr. Wade's Motion to Compel Arbitration on the Removed Claim.

Based on the forgoing and consideration of the entire Chapter 7 case and the records of both adversary proceedings as a whole, IT IS ORDERED AND NOTICE IS HEREBY GIVEN that:

1. Mr. Wade's motion to dismiss the removed adversary proceeding is denied;

2. Mr. Wade's Motion to Compel Arbitration also is denied;

3. The remaining bifurcated arbitration questions (i.e., whether an arbitration clause exists and whether such a clause was fraudulently induced) essentially are rendered moot; and

4. The Bankruptcy Court Clerk shall cause a copy of these Orders and Notice of the entry thereof to be sent to the following interested entities:

**SO ORDERED.**

