**IN RE NO PLACE LIKE HOME, INC., Debtor.**

**Tax ID/EIN: 62–1095865**

**Case No. 15–31133–K**

United States Bankruptcy Court, W.D. Tennessee, Western Division.

Signed 10/27/2016

---

E. Franklin Childress, Jr., Esq., M. Ruthie Hagan, Esq., Angie C. Davis, Baker Donelson Bearman Caldwell & Berkowitz, PC, 165 Madison Avenue, Suite 2000, Memphis, Tennessee 38103, fchildress@bakerdonelson.com, rhagan@bakerdonelson.com, angiedavis@bakerdonelson.com, Attorneys for Debtor—NPLH

Laurie D. Pulliam, Esq., LDP Law, LLC, 16901 Melford Blvd., Suite 123, Bowie, Maryland 20715, lpulliam@ldpulliamlaw.com, Co–Counsel for the Official Committee of Unsecured Creditors

Leland Murphree, Caynard Cooper & Gale, PC, 1901 6th Avenue North, Suite 2400, Birmingham, Alabama 35203, lmurphree@maynardcooper.com, Co–Counsel for the Official Committee of Unsecured Creditors

Joan Dickerson Williams, Esq., Kevin C. Gray, Esq. Maynard, Cooper & Gale, PC, 655 Galatin Street SW, Huntsville, Alabama 35801, jdwilliams@maynardcooper.com, kgray@maynardcooper.com, Co–Counsel for the Official Committee of Unsecured Creditors

Karen P. Dennis, Esq., Office of the United States Trustee, 200 Jefferson Avenue, Suite 400, Memphis, Tennessee, 38103 Karen.P.Dennis@usdoj.gov, Trial Attorney for U.S. Trustee for Region 8

David J. Cocke, Esq., Evans | Petree PC, 1000 Ridgeway Loop Road, Suite 2000, Memphis, Tennessee 38120, dcocke@evanspetree.com, Attorney for Claimants

William B. Ryan, Esq., Donati Law, PLLC, 1545 Union Avenue, Memphis, Tennessee 38104, billy@donatilawfirm.com, Attorney for Claimants

## MEMORANDUM AND ORDER RE GRANTING "MOTION TO LIFT AUTOMATIC STAY TO PERMIT ARBITRATION OF CLAIMS" COMBINED WITH RELATED ORDERS AND NOTICE OF THE ENTRY THEREOF

David S. Kennedy, UNITED STATES CHIEF BANKRUPTCY JUDGE

### INTRODUCTION

This core proceeding under 28 U.S.C. § 157(b)(2)(B) and (G) arises out of a "Mo-

tion To Lift Automatic Stay To Permit Arbitration of Claims" (hereinafter "Motion") filed by David J. Cocke, Esquire ("Mr. Cocke"), under 11 U.S.C. § 362(d)(1) for and on behalf of twenty-two (22) nurse claimants, Akisha Bailey, Brandy Butler, Tacaweta Burton, Cynthia Davis, Latoya Freeman, Darrick Glasper, Latonya Gober, Cherica Hill, Kecia Huddleston, Lashunda Ilbourg, Estelle Ingraham, Rhonda Johnson, Candace Marshall, Linda McGee–Labarre, Eva Mitchell, Karen Mitchell, Kesia Nevels, Idell Rice, Tara Thomas, Ericka Walker–Cole, Bernice Warren, and Shemika Willis ("Claimants").[1] Mr. Cocke is the Chapter 11 attorney for the above-named Claimants along with William B. Ryan, Esquire. E. Franklin Childress, Jr., Esquire ("Mr. Childress"); Ruthie M. Hagan, Esquire ("Ms. Hagan"); and Angie C. Davis, Esquire ("Ms. Davis"), attorneys for the above-named Chapter 11 debtor, No Place Like Home ("NPLH"), filed a written objection or response thereto and participated at the hearing on the Motion that was held on October 21, 2016. These attorneys all appeared at the hearing on the Motion and provided thoughtful oral statements on behalf of the position of each of their respective clients.

This specific proceeding presents the question whether under particular facts and circumstances and applicable law the bankruptcy court or an arbitrator should ultimately resolve a certain federal wage and hour matter involving, for example, overtime and wage claims for an additional third year under the Fair Labor Standards Act ("FLSA"). That is, whether the subject arbitration agreements should be heard and enforced by an arbitrator or a bank-

ruptcy judge. There are various threshold questions for judicial determination here that the court should address: (1) whether the Federal Arbitration Act ("FAA") applies to the subject arbitration agreement; (2) whether the relevant statutory provisions and policies of the FAA conflict with the relevant statutory provisions and policies of the Bankruptcy Code; (3) whether the parties expressly agreed to arbitrate; (4) whether the issues would be better suited before an arbitrator or a bankruptcy judge; and (5) whether the bankruptcy court should exercise discretion, if any, under the existing facts and circumstances of this case to allow for arbitration or judicial proceedings.

The overarching issue, and ultimately what this proceeding comes down to, is what forum (arbitration or the bankruptcy court) should hear, determine, and liquidate the Claimants' asserted claims against NPLH? Assuming discretion exists, the bankruptcy court should utilize its discretion with great care in such matters to ensure that the arbitration dispute is appropriately and properly resolved in the most just, speedy, and inexpensive manner as possible before an arbitrator or a bankruptcy judge while recognizing the inherent statutory tension between the FAA and the Bankruptcy Code.[2] This may mean compelling arbitration at times when the court feels under the existing facts and circumstances that it is appropriate, while at other times deciding that arbitration would likely frustrate the judicial process and should be avoided. This determination regarding when to compel arbitration arising out of a bankruptcy case should be made on a case-by-case basis/analysis until such time as Congress or the Supreme

---

1. This proceeding is essentially a motion filed by the Claimants, who are employees of the above-names debtor, seeking to compel arbitration.

2. Cf. the judicial goal of the bankruptcy court set forth in FED. R. BANKR. P. 1001 (2016) ("to secure the just, speedy, and inexpensive determination of every case and proceeding").

Court provides a clear and predictable litmus test to avoid the existing statutory tension, conflicts, and collision between the federal policies and goals of the Arbitration Act and the Bankruptcy Code.

## BACKGROUND FACTS, CIRCUMSTANCES, AND PROCEDURAL HISTORY

After considering statements of counsel made at the hearing and the entire case record as a whole, the following shall constitute this court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. Although the parties have a strong difference of opinion regarding the outcome of the instant Motion, nonetheless, the pre- and post-petition background facts and circumstances, and procedural history are not in substantial dispute and may be summarized, in relevant part, as follows.

NPLH is a Tennessee corporation that provides home health care to pediatric patients. NPLH was founded and is owned by Mrs. Mary Lynn Flood ("Mrs. Flood"). NPLH is operated by Mr. Craig Flood, acting as President, ("Mr. Flood"), and Mrs. Flood, acting as the sole owner, director, and Secretary (collectively "the Floods"). The Floods are husband and wife. NPLH currently employs approximately two-hundred (200) individuals, including licensed practical nurses ("LPNs") and registered nurses ("RNs"), in the Tennessee counties of Shelby, Fayette, and Tipton.

Prior to November 16, 2015, the Claimants had entered into Independent Contractor Agreements with NPLH, which contained, among other things, an arbitration clause. (Claimants' Mot. Ex. C). All of the LPNs and RNs were required to sign this contract before they continued their work with NPLH. On April 16, 2015, Darrick Glasper, one of the Claimants, filed a civil complaint in the United States District Court for the Western District of Tennessee ("District Court") seeking primarily to recover unpaid overtime premiums, liquidated damages, attorneys' fees, and litigation costs [3] against NPLH while attempting also to initiate a class action lawsuit.[4] NPLH responded and insisted that the arbitration clause in the contract be enforced. The District Court agreed, leading to numerous arbitration actions against NPLH regarding NPLH's compensation practices of its independent contractors and the FLSA.[5] By classifying the

---

3. 29 U.S.C. § 216(b) (2012).

4. *Glasper v. No Place Like Home, Inc.*; Case Number 2:15–cv–02253–JPM–dkv; Closed on August 7, 2015.

5. On October 15, 2015, and later, Glasper, Nevels, Ingraham, and other Claimants filed individual arbitration demands with the American Arbitration Association ("AAA") against NPLH in the following actions:

*Glasper v. NPLH*, AAA No. 01–15–0005–3451 (filed October 15, 2015)
*Nevels v. NPLH*, AAA No. 01–15–0005–3452 (filed October 15, 2015)
*Ingraham v. NPLH*, AAA No. 01–15–0005–3453 (filed October 15, 2015)
*Ibourg v. NPLH*, AAA No. 01–15–0005–6426 (filed November 11, 2015)

*Thomas v. NPLH*, AAA No. 01–15–0005–6437 (filed November 11, 2015)
*Johnson v. NPLH*, AAA No. 01–15–0005–6445 (filed November 11, 2015)
*McGee–LaBarre v. NPLH*, AAA No. 01–15–0005–6492 (filed November 11, 2015)
*Willis v. NPLH*, AAA No. 01–15–0005–6648 (filed November 13, 2015)
*Walker v. NPLH*, AAA No. 01–15–0005–6649 (filed November 13, 2015)
*Bailey v. NPLH*, AAA No. 01–15–0005–6855 (filed November 16, 2015)
*Mitchell v. NPLH*, AAA No. 01–15–0005–6856 (filed November 16, 2015)
*Gober v. NPLH*, AAA No. 01–15–0005–7016 (filed November 17, 2015)
*Butler v. NPLH*, AAA No. 01–15–0005–7162 (filed November 18, 2015)

Claimants as "independent contractors," they were denied several employee protections, including overtime pay, benefits, and proper tax withholdings in accordance with the FLSA.[6]

On November 16, 2015, NPLH, without admitting liability, changed the classification of its nurses from independent contractors to non-exempt hourly "employees" under the FLSA. After this decision, NPLH chose to no longer schedule or use any nurse that was previously classified as an independent contractor. This decision also included the obligation to pay the existing "employees" overtime for the past two (2) years for all hours worked over the forty (40) hours in a workweek, as well as liquidated damages.

Once the above-decision was made, NPLH filed an original Chapter 11 case on November 20, 2015 (the "Petition Date"). NPLH also filed an "Application to Employ Baker Donelson as Attorneys" on November 22, 2015. Since the commencement of this Chapter 11 case, NPLH has continued to operate its business as a debtor-in-possession in accordance with the statutory provisions of §§ 1107 and 1108 of the Bankruptcy Code. On February 16, 2016, an official committee of unsecured creditors (hereinafter the "Unsecured Creditors Committee") was formed by the United States Trustee for Region 8.

On March 22, 2016, NPLH filed an "Objection to Claim 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48". (Docket No. 120). A "Response" was filed by the Claimants on September 6, 2016, asserting their right to recover damages accrued during the three (3) years immediately preceding the date they individually filed their actions. (Dock-

et No. 265). A "Reply" was filed by NPLH on September 26, 2016, reserving its rights to contest the factual allegations until judicial adjudication of this Motion. (Docket No. 278). Prior to the above-mentioned reply, NPLH filed a "Second Amended Disclosure Statement" on August 16, 2016, and the "Tally Of Ballots" for the confirmation hearing regarding the Chapter 11 reorganization plan (hereinafter the "Plan") on September 16, 2016.

After a hearing before this court on September 19, 2016, regarding the confirmation of NPLH's Plan which was combined with a pre-trial conference on the above-mentioned objections to the Claimants' claims, this court, with the parties' consent, opted to continue the FED. R. BANKR. P. 9014 contested matters regarding the objection to claims, but confirmed the amended Plan without opposition based on a totality of the particular facts and circumstances and applicable law. *See* 11 U.S.C. § 1129(a). The court rendered an oral bench ruling that confirmed the debtor's amended Plan and bifurcated the objection to the Claimants' claims to be determined and liquidated after arbitration or judicial proceedings.

The "Order Confirming Second Amended Chapter 11 Plan of Reorganization of No Place Like Home, Inc." was docketed on October 3, 2016, and the instant § 362(d)(1) Motion was filed by the Claimants on September 28, 2016 (Docket No. 280) and contained a Bar Date of October 14, 2016, but a "Consent Order Extending the Time to File an Objection or Response Thereto" was entered into that same day. NPLH subsequently filed its objection to the Motion on October 17, 2016. (Docket

---

*Taylor v. NPLH*, AAA No. 01–15–0005–7360 (filed November 19, 2015)
*Rice v. NPLH*, AAA No. 01–15–0005–7440 (filed November 20, 2015)

Darrick Glasper's arbitration demand is currently styled as a class action under the AAA.

**6.** 29 U.S.C. § 201, *et seq.* (2012).

No. 300). The proceeding to hear the § 362(d)(1) motion to compel arbitration and the objection thereto came on to be heard before this court on October 21, 2016.

Now, after almost one (1) year of preliminary litigation in the bankruptcy court, this court now comes to determine the threshold but ultimate issue and crux of the preliminary litigation involving these parties—the question regarding the enforcement of the arbitration provision. As noted earlier, the Claimants, in essence, seek to compel arbitration of the objected-to claims; NPLH objects to arbitration and, instead, seeks to have the bankruptcy court try on the merits the objections to claims as core contested matters under 28 U.S.C. § 157(b)(2)(B) and FED. R. BANKR. P. 9014.

## DISCUSSION

As noted earlier, this case involves litigation between the Claimants and NPLH and directly addresses the statutory tension, interplay, and obvious inherent conflict of these coequal federal statutes: the FAA and the Bankruptcy Code. According to some case law, bankruptcy judges generally do not have discretion to refuse to compel arbitration of non-core matters because they are usually only tangentially related to a bankruptcy case [7]; however, bankruptcy courts may, according to some other case law, exercise discretion to refuse to compel arbitration of certain core bankruptcy matters, which trigger, for example, more pressing bankruptcy concerns. *See,* among others, *Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. B.J. Wade (In re B.J. Wade),* 523 B.R. 594

(Bankr. W.D. Tenn. 2014). It is expressly noted that the mere fact that a proceeding is deemed as core under 28 U.S.C. § 157(b)(2) "will not automatically give the bankruptcy court discretion to stay arbitration." *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. (In re United States Lines, Inc.),* 197 F.3d 631, 640 (2d Cir. 1999). "Certainly not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the [FAA]; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.),* 118 F.3d 1056, 1067 (5th Cir. 1997).

The court will now address each of the relevant statutes in light of the specific issues in this proceeding and provide a detailed analysis of the statutes with the issues at hand.

## General Application of the Federal Arbitration Act

Congress passed the FAA in 1925, more than eighty years ago.[8] The basic purpose of the FAA is to master courts' refusals to enforce agreements to arbitrate. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The FAA provides that a written arbitration agreement in "a contract evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). Simply put, the agreement must (1) be in

---

**7.** *Ackerman and Kuriloff v. Eber (In the Matter of Eber),* 687 F.3d 1123 (9th Cir. 2012); *MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104, 108 (2d Cir. 2006); *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160 (2d Cir. 2000); *MCI*

*Telecomms. Corp. v. Gurga (In re Gurga),* 176 B.R. 196 (9th Cir. BAP 1994).

**8.** Act Feb. 12, 1925, c. 213 § 2, 43 Stat. 883, codified as 9 U.S.C. §§ 1–16.

writing, (2) involve interstate commerce, and (3) withstand contract defenses, in order for the FAA to apply to the arbitration agreement at issue. "The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, 9 U.S.C. § 4." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

One primary question that must be dealt with prior to the discussion of whether to compel or deny enforcement of an arbitration provision is whether the arbitration agreement at issue relates to a transaction involving commerce. *See* 9 U.S.C. § 2 (2012). The Supreme Court has analyzed the phrase "involving commerce" and determined that the provision is broader than the phrase "in commerce," indicating Congress' intent to utilize its Commerce Clause powers to the fullest. *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–75, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *see, e.g., Perry v. Thomas*, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (The FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). When given the question of whether all employment contracts are governed by the FAA, the Supreme Court held that most all employment contracts are subject to the FAA because they involve commerce.[9] *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

 The FAA is a rare doctrine in the field of federal court jurisdiction. It creates a body of federal substantive law establishing and controlling the duty to recognize and honor an arbitration agreement. *Moses*, 460 U.S. at 24, 103 S.Ct. 927 (citing 9 U.S.C. § 2 (2012)). The substantive law is "applicable in state as well as federal courts." *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). Yet, the FAA does not create federal subject matter jurisdiction. *Moses*, 460 U.S. at 19, 103 S.Ct. 927. The parties must still assert an independent basis for the federal court to have jurisdiction.

### FAA Applicability in Bankruptcy

 By enacting the FAA, Congress consequently established a federal policy favoring arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (*citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The Supreme Court has repeatedly stated that questions of arbitrability must be addressed with a "healthy regard for the federal policy favoring arbitration." *See, e.g., Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (citation omitted). In addition, the United States District Court for the Western District of Tennessee has stated that "courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration." *L&R Farm P'ship et al. v. Cargill, Inc.*, 963 F.Supp.2d 798, 803 (W.D. Tenn. 2013). "[P]rivate parties who contract for arbitration, as a more efficient method of dispute resolution, shall not have their bargains frustrated." *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1160 (3d Cir. 1989) (footnote and citation omitted).

9. Transportation employment contracts are not subject to the FAA. 9 U.S.C. § 1 (2012).

██ To fully accomplish the FAA's goals—"the enforcement of private agreements [to arbitrate] and encouragement of efficient and speedy resolution"—the courts must "rigorously enforce agreements to arbitrate even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). This is true even when a claim is founded on a statutory right. *McMahon*, 482 U.S. at 226, 107 S.Ct. 2332. Standing alone, the FAA mandates enforcement of arbitration agreements for statutory claims; however, "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Id.* The burden is on the party opposing arbitration to show that Congress intended to limit or prohibit waiver of a judicial forum for a particular claim. *Id.* at 227, 107 S.Ct. 2332. This may be shown by one of three ways: "(1) the statute's text, (2) the statute's legislative history, or (3) an inherent conflict between the arbitration and the statute's underlying purposes." *Id.* ("McMahon Framework").

██ If the statute's text or legislative history implies a congressional limitation or prohibition of the FAA, the arbitration agreement will not be strictly enforced. However, if no statutory text or legislative history exists on this topic, the court must then look to the third prong of the *McMahon* Framework: whether there is an inherent conflict between each purpose of the two federal acts. If an inherent conflict does exist, the court has discretion on the issue of arbitration; but, if there is no inherent conflict, the court must compel arbitration and does not have discretion to decide the issue. *Mintze v. Am. Gen. Fin. Servs. (In re Mintze)*, 434 F.3d 222, 228–230 (3d Cir. 2006) (citing *Hays*, 885 F.2d at

1156 (3d Cir. 1989)). The majority of courts have determined that Congress did not use statutory text or legislative history to expressly limit the FAA's application to the Bankruptcy Code. *See, e.g.*, *Mintze v. Am. Gen. Fin. Servs. (In re Mintze)*, 434 F.3d 222 (3d Cir. 2006); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989); *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In the Matter of Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir. 1997); *Ackerman and Kuriloff v. Eber (In the Matter of Eber)*, 687 F.3d 1123 (9th Cir. 2012); *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir. 2012); *The Whiting–Turner Contracting Co. v. Elec. Mach. Enter., Inc. (In re Electric Machinery Enterprises, Inc.)*, 479 F.3d 791 (11th Cir. 2007). The Sixth Circuit evidently has not been presented with this issue and the Second and Fourth Circuits apparently have avoided addressing this issue by skipping the first of two prongs of the *McMahon* Framework and going directly to the third prong. *See In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999); *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006); *White Mtn. Mining Co, L.L.C. v. Congelton, L.L.C. (In re White Mtn. Mining Co., L.L.C.)*, 403 F.3d 164 (4th Cir. 2005); *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015).

Prior case law in the Sixth Circuit held that "whether the bankruptcy court should surrender its jurisdiction to another tribunal involved the exercise of judicial discretion." *In the Matter of Muskegon Motor Specialties Co. ("Muskegon")*, 313 F.2d 841, 842 (6th Cir. 1963) (citing *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876 (1940); and, also, *Mangus v. Miller*, 317 U.S. 178, 186, 63 S.Ct. 182, 87 L.Ed. 169 (1942)); *see also In re F & T Contractors, Inc.*, 649 F.2d 1229 (6th Cir. 1981). *McMahon* has since

arguably overruled this proposition. These pre–*McMahon* courts determined that "the bankruptcy laws and related jurisdictional texts (*see* now 28 U.S.C. § 1334(e)(1)) limited the FAA, specifically as concerns exclusive jurisdiction over property of the estate in *Muskegon* and the claims allowance process in *F & T Contractors*." *B.J. Wade*, 523 B.R. at 604.

Two Tennessee bankruptcy courts have addressed whether *McMahon* overruled *Muskegon* and *F & T Contractors.See In re B.J. Wade*, 523 B.R. 594 (Bankr. W.D. Tenn. 2014); *Trinity Commc'ns, LLC v. Momentum Telecomms., Inc. (In re Trinity Commc'ns, LLC)*, 2012 WL 1067673, at *14 (Bankr. E.D. Tenn. Mar. 14, 2012) (holding that *McMahon* overruled *Muskegon* and *F & T Contractors*); *see also In re Hermoyian* 435 B.R. 456 (Bankr. E.D. Mich. 2010) (applying the *McMahon* framework but not specifically overruling). This court in *B.J. Wade* has previously held that the statutory text and legislative history of the Bankruptcy Code suggests a limitation on the FAA mandate and determined that "Congress intended that the bankruptcy courts should have discretion on questions of arbitration." 523 B.R. at 604. This court emphasized that the bankruptcy court in appropriate cases has discretion to exercise jurisdiction over property of the § 541 estate, including hearing and determining all claim disputes under 11 U.S.C. § 502. *Id.* at 609; *See also* 28 U.S.C. §§ 157(a) and 1334(e).

■ Congress could have implemented exceptions, including an arbitration exception, to the bankruptcy courts' exclusive jurisdiction under 28 U.S.C. § 1334(e), but it did not. Sections 1334(e) and 157(a) of title 28 give the bankruptcy court exclusive jurisdiction over all property of the debtor, wherever it is located, and the entire § 541 estate. "Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction." *Central Virginia Community College v. Katz*, 546 U.S. 356, 369–70, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006). "[B]y filing a claim against a bankruptcy estate the creditor triggers 'the process of allowance and disallowance of claim,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (quoting and citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59, n. 14, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)). This court in *B.J. Wade* stated that "the clear and express language of 28 U.S.C. § 1334(e)(1) was intended by Congress to exclude any adjudicators other than the bankruptcy court from exercising control over property of the estate absent the bankruptcy court's approval." 523 B.R. at 605; *see also* 28 U.S.C. § 1334(c). This seemingly presents the district court/bankruptcy court with the sole power to use its discretion to determine whether arbitration of a particular matter should be compelled or denied. 28 U.S.C. §§ 157(a) and 1334(e).

■ Congress passed the Bankruptcy Code with two primary purposes: first, to give the honest but unfortunate debtor a fresh start and, second, to ensure a fair and equitable distribution of the debtor's property to creditors holding valid claims. *Burlingham v. Crouse*, 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920 (1913); *see also Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918); *Kokoszka v. Belford*, 417 U.S. 642, 645–46, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). The Supreme Court has stated that a central purpose of the Bankruptcy Code is to provide a process by which debtors can reorganize their financial matters, make amends with their creditors, and enjoy "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discour-

agement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citing, in part, *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). To enforce these goals of the Bankruptcy Code, Congress has now created bankruptcy courts with appointed Article I bankruptcy judges, and granted the judges jurisdiction under title 11. *See* 28 U.S.C. §§ 151 and 152. It is noted that a congressional policy has existed in America since 1938 favoring reorganization over liquidation. An underlying purpose of Chapter 11 of the Bankruptcy Code is "to permit successful rehabilitation of debtors" and "to prevent a debtor from going into liquidation." *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Specific provisions of the Bankruptcy Code should be interpreted with this goal in mind. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984). *Compare* FAA.

■■■■■■ Typically, when determining whether to compel arbitration of a dispute arising in a bankruptcy case, the courts sometimes distinguish between "core" and "non-core" proceedings. A "core proceeding" is a proceeding in a bankruptcy case that involves claims that substantially affect the debtor's estate or is essential to the bankruptcy case as a whole. 28 U.S.C. § 157(b)(2) (2012). A "non-core proceeding" is a proceeding in a bankruptcy case that involves or is related to a claim that will affect the administration of the debtor's estate, but that does not arise under bankruptcy law and could be adjudicated in a state court. 28 U.S.C. § 157(c)(1). The bankruptcy court may issue only proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court, unless all of the parties consent otherwise. 28 U.S.C. § 157(c)(2); FED. R. BANKR. P. 9033(d) (2016).

[G]enerally, bankruptcy judges do not have discretion to refuse to compel arbitration of non-core matters because they are generally only tangentially related to a bankruptcy case. Bankruptcy Courts may, however, exercise discretion to refuse to compel arbitration of core bankruptcy matters, which implicate more pressing bankruptcy concerns. Yet, even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that inherently conflict with the [FAA] or that arbitration of the claim would necessarily jeopardize the objectives of the Bankruptcy Code.

*In re Eber*, 687 F.3d at 1130, n.6 (quoting *McMahon*, 482 U.S. at 227, 107 S.Ct. 2332) (citations omitted) (affirming the lower court's decision not to compel arbitration where the underlying claims were also subject to a dischargeability determination).

In *Eber*, the creditors commenced arbitration proceedings against the debtor prior to the filing of bankruptcy. The debtor then filed a Chapter 7 case and was subsequently successful in staying arbitration. The creditor had filed an adversary proceeding in the bankruptcy case alleging that the debts owed to it were non-dischargeable under 11 U.S.C. § 523(c). The bankruptcy court determined that although the creditors were attempting to designate their underlying state law claim as non-core, arbitrable claims, in actuality, they were seeking to arbitrate dischargeability—a "hard core" bankruptcy issue. Therefore, the main issue was inextricably intertwined with the Bankruptcy Code. The court further stated:

Allowing an arbitrator to decide issues that are so closely intertwined with dischargeability would conflict with the un-

derlying purposes of the Bankruptcy Code. Courts must consider the Bankruptcy Code's objectives, including centralization of disputes concerning the debtor's legal obligation, and protection of debtors and creditors from piecemeal litigation.

*In re Eber*, 687 F.3d at 1130–31(citations omitted); *see also In re Koper*, 516 B.R. 707 (Bankr. E.D.N.Y. 2014) (reaching the same holding as *Eber* with similar facts).

Like in *Eber*, the purposes of the Bankruptcy Code and related title 28 provisions at issue in *In re B.J. Wade, supra*, were in inherent conflict with the FAA because "compelling arbitration would undermine the centralization of the disputes and the exclusive bankruptcy jurisdiction regarding dischargeability (and possibly the general discharge under § 727(a))." *B.J. Wade*, 523 B.R. at 607. In *B.J. Wade*, the creditor commenced a State Court action against the debtor (Mr. Wade) prior to the bankruptcy seeking to compel the debtor to submit to arbitration. *Id.* at 597–98. The debtor then filed for a Chapter 7 petition under the Bankruptcy Code and removed the creditor's pre-bankruptcy lawsuit to the bankruptcy court in accordance with 28 U.S.C. § 1452(a) and FED. R. BANKR. P. 9027. *Id.* at 598–99. At the time the case was removed, the parties had made little progress towards resolving the merits of the creditor's claim because arbitration disputes arose that eventually proceeded on appeal to the Tennessee Supreme Court, who had not yet rendered a decision. *Id.* at 599. Once the debtor's Chapter 7 petition was filed, the creditor timely filed an adversary proceeding pursuant to FED. R. BANKR. P. 7001(6) seeking to determine the dischargeability of its claims against the debtor under 11 U.S.C. § 523(a)(2), (4), and (6) and except its claims from the general discharge. *Id.* This court determined that "[a] finding on liability on the [creditor's] underlying claims by an arbitrator would necessarily involve a finding of fraud, defalcation, or other wrongdoing which would come within the purview of the bankruptcy court's exclusive jurisdiction over the issue of dischargeability of such claims under 523(a)(2), (4), and (6) of the Bankruptcy Code." *Id.* at 609.

The instant case before the court is clearly distinguishable from the cases of, for example, *Eber* and *B.J. Wade*. It is expressly noted that such conflicts as existed then clearly do not exist in the instant proceeding. For example, there is no claim here seeking § 523(a) dischargeability. The claims at issue here seek to enforce arbitration, are purely statutory, and deal with the asserted pre-petition liability of NPLH, not claims arising under the Bankruptcy Code. In Chapter 11 cases, liquidation/litigation of disputed claims is typically not done until after confirmation of the plan. Generally, administrative expenses and other priority expenses are paid first in Chapter 11 cases and once that happens, there sometimes is nothing left in the § 541 estate to pay to the priority unsecured creditors or the Chapter 11 case may be dismissed or converted. It ordinarily would go against FED. R. BANKR. P. 1001 to litigate and make a determination on disputed claims prior to confirmation and, therefore, it should be determined after the plan is in effect and substantially consummated.

This Chapter 11 case technically involves a statutorily denominated core proceeding because it seeks relief from the automatic stay and also involves the "allowance and disallowance of claims against" the § 541(a) estate, specifically the Claimants' overtime and wage claims for an additional third year. 28 U.S.C. §§ 157(b)(2)(B) and (G) (2012). Ordinarily, the bankruptcy court exercises concurrent

jurisdiction over civil proceedings arising under, arising in, or related to cases under title 11. *See* 28 U.S.C. § 1334(b). However, it is noted that sometimes the bankruptcy court may in appropriate proceedings choose to abstain from hearing a particular claim in the interest of justice or in the interest of comity with State courts or respect for state law. 28 U.S.C. § 1334(c)(1). If the bankruptcy court chooses to abstain, the court may then provide relief from the automatic stay under 11 U.S.C. § 362(a) to allow another jurisdiction or court to proceed, or may remand a removed claim under 28 U.S.C. 1452(b) and FED. R. BANKR. P. 9027(d).

The reasoning used by the Third Circuit in *Mintze* is similar to the reasoning in this case. In *Mintze*, the court stated that "[t]o override the FAA's mandate for enforcement of arbitration, the *McMahon* standard requires congressional intent 'to preclude a waiver of judicial remedies for the *statutory rights* at issue'." 434 F.3d at 231 (citing *McMahon*, 482 U.S. at 227, 107 S.Ct. 2332) (emphasis added). The statutory claims raised in *Mintze* were based on the Truth In Lending Act and several federal and state consumer protection laws. *Id.* at 226–27, 107 S.Ct. 2332. The court stated that the debtor failed to raise any statutory claims that were created by the Bankruptcy Code. *Id.* at 231, 107 S.Ct. 2332. The court further stated "[w]ith no bankruptcy issue to be decided by the Bankruptcy Court, we cannot find an inherent conflict between arbitration of Mintze's federal and state consumer protection issues and the underlying purposes of the Bankruptcy Code." *Id.* at 231–32, 107 S.Ct. 2332. Here, the claims at issue arise strictly out of the FLSA and contract law. There is no underlying bankruptcy issue to be determined and, therefore, there can be no inherent conflict between the FAA and the Bankruptcy Code.

Further, the bankruptcy court in the Eastern District of Tennessee has followed the lead of the Third Circuit's case of *In re Mintze*, 434 F.3d 222 (3d Cir. 2006). *In re Trinity Commc'ns, LLC*, 2012 WL 1067673 at *9 (Bankr. E.D. Tenn. Mar. 14, 2012); *see Great Spa Manuf. Co., Inc. v. Costco Wholesale Corp.*, 2009 WL 1457740 (Bankr. E.D. Tenn. May 22, 2009). In *Great Spa Manuf. Co.*, the court cited the Third Circuit's decision in *Mintze* with approval. *Id.* at *5. The bankruptcy court in *Great Spa Manuf. Co.* determined that:

> [r]egardless of whether this action is core or non-core, it is undisputed, ... that the Debtor's cause of action is not derived from any provision of the Bankruptcy Code. Thus, no inherent conflict between the Bankruptcy Code and the Federal Arbitration Act is presented. In bringing this action to recover prepetition accounts, the Debtor is bound by its arbitration agreements, just as it would have been had this bankruptcy case not been filed.
>
> In this regard, the court agrees that the determinative inquiry in enforcing an arbitration provision is the source of the Debtor's cause of action, rather than the core/non-core jurisdictional distinction....

*Id.* at *6. The *Great Spa Manuf. Co.* court also relied on several cases within the Sixth Circuit that granted motions to compel arbitration where no inherent conflict with the Bankruptcy Code was established. *See e.g., In re Transport Assocs., Inc.*, 263 B.R. 531, 535 (Bankr. W.D. Ky. 2001) (granting motion to compel arbitration of objection to creditor's claim even though issues arose through "claims allowance process"—typically a "hard core proceeding"—where "the arbitration of this contractual dispute does not directly conflict with the Bankruptcy Code"); *Pelikan Holding AG v. Nu–Kote Holding, Inc. (In*

*re Nu–Kote Holding, Inc.)*, 257 B.R. 855, 864 (Bankr. M.D. Tenn. 2001) (finding that " 'inherited contractual claims' derivative of the pre-bankruptcy agreements" were subject to arbitration); *James P. Barkman, Inc. v. Granger Constr. Co. (In re James P. Barkman, Inc.)*, 170 B.R. 321 (Bankr. E.D. Mich. 1994) (granting the creditor's motion to dismiss and compel arbitration where debtor in possession failed to meet its burden of proof to show an exception to § 3 of the FAA).

Simply put, the Claimants here merely seek to have their claims based in non-bankruptcy law heard and determined by an arbitrator who specializes in federal wage and hour law. In addition, the Claimants seek to enforce the arbitration provision created in the valid contract they entered into with NPLH. Under these particular facts and circumstances, allowing the parties to proceed to arbitration seemingly would, among other things, be just, speedy, and inexpensive in accordance with FED. R. BANKR. P. 1001 and concomitantly with no appeals. Since the FAA provides for a stay of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, a stay is proper. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). The importance of the bankruptcy court's involvement in the claims allowance process would be minimal at this point because the only claims that remain to be determined are those of the Claimants. Here, there is no inherent conflict between the Bankruptcy Code and the FAA and keeping the claims in the bankruptcy court could lead to unnecessary litigation costs and delays, in addition to conflicting results due to the possibility of an appeal.

### Exercising Discretion

Bankruptcy courts possess broad discretion to grant a motion for relief from the stay and to compel arbitration if there is an underlying written agreement/provision to arbitrate and, if doing so, would be helpful and assist the bankruptcy court in exercising its bankruptcy jurisdiction. *Compare* FED. R. BANKR. P. 9019(c) (2016). Under the FAA, an arbitration provision is severable from the remainder of the contract, such that its validity is subject to initial court determination; but if the arbitration provision is valid, the validity of the remainder of the contract is left for the arbitrator to decide. *Nitro–Lift Technologies, LLC v. Howard*, —— U.S. ——, 133 S.Ct. 500, 503, 184 L.Ed.2d 328 (2012) (per curium) (citations omitted); *see also Buckeye*, 546 U.S. at 446, 126 S.Ct. 1204; *Compare Preston v. Ferrer*, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (holding that an arbitrator, not a federal or state court, will resolve questions concerning validity in the first instance when parties agree to arbitrate all disputes arising under their contract). "A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d. Cir. 2005). Arbitration is mandatory pursuant to NPLH's "Independent Contractor Agreement," which states:

Arbitration. Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in Memphis, TN in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof, provided however that the Company shall not be required to arbitrate of any action by Contractor which would entitle Company to seek relief under paragraph 7 or 8 of this Agreement.

(Darrick Glasper's Agr., ¶ 15.) Paragraphs seven and eight of the Independent Con-

tractor Agreement reference "Conflicts of Interest," "Non–Solicitation," "Non–Hire," and "Right to Injunction." (*Id.* at ¶¶ 7–8.) The issues discussed in paragraphs seven and eight are irrelevant to the issue at hand and this court will not address them.

In addition, courts have looked to approximately eight factors when determining whether to compel or deny an arbitration request:

1) Whether the arbitration proceeding was commenced prepetition;

2) Whether the party seeking arbitration has formally appeared in the bankruptcy case;

3) Whether the arbitrator has special knowledge or expertise which would be helpful to the resolution of the disputed issues;

4) Whether there is a strong likelihood that the debtor will be able to have a plan confirmed;

5) Whether there is an international arbitration provision;

6) The likelihood of piecemeal litigation;

7) Whether the issue to be arbitrated is core or noncore; and

8) What impact resolution of the issue will have on the bankruptcy estate.

*B.J. Wade*, 523 B.R. at 612 (citing *In re Nu–Kote Holding, Inc.*, 257 B.R. 855, 863 (Bankr. M.D. Tenn. 2001)) (gathering factors from six other courts).

The court will now address and apply each of the above-stated factors to the particular facts and circumstances of the instant proceeding.

First, the majority of the Claimants' arbitration proceedings were commenced prepetition.[10] In fact, prior to NPLH's bankruptcy filing, NPLH responded to a State Court complaint filed by one of the Claimants and insisted that the arbitration provision in their contract be enforced. The District Court agreed with NPLH by dismissing the case and compelling arbitration, provoking several arbitration demands by the Claimants. Once the State Court proceeding was concluded and the arbitration proceedings commenced, NPLH filed its Chapter 11 petition. Therefore, the adjudicator did not have the opportunity to determine the issues brought by the Claimants. The Claimants are already being paid overtime and back-pay for two (2) of the three (3) years they claim they were denied these privileges through the Plan. The claims now before this court primarily deal with whether the Claimants have a right to a third year of overtime pay under the FLSA based on their employment classification.

This is an issue that has been ongoing since before this Chapter 11 petition was filed; therefore, this factor weighs heavily on this court. It is noted that a Plan channeling injunction under 11 U.S.C. § 524(g) is now in place as to the Floods since the confirmation of the Plan. However, if the parties in arbitration choose not to consolidate, once a ruling is made on one (1) of the Claimants' claims, it may act as collateral estoppel as to all. Recognizing that this process could take place in either forum, it is now left up to this court to determine whether to compel arbitration or allow the claims to move forward in the bankruptcy court.

Second, the Claimants seeking to compel arbitration have formally appeared in the bankruptcy case to preserve their rights,

**10.** 15 out of 22 Claimants filed their arbitration proceedings prepetition. The other seven Claimants intend to file arbitration proceedings. Two Claimants did actually file their arbitration demands, but it was the business day after NPLH had filed its Chapter 11 petition.

but had previously chosen a different forum to adjudicate their claims for that third year. NPLH filed this Chapter 11 case, which stayed the arbitration proceedings. *See* 11 U.S.C. § 362(a) (2012). The Claimants appeared in this case by filing proofs of claims and through their attorneys also object to the disputed portion of their claims against NPLH being liquidated by a bankruptcy judge. The point that the Claimants had a prior State Court action filed arguably demonstrates that they did not expressly consent to the jurisdiction of the bankruptcy court. In addition, NPLH interestingly removed the State Court action to arbitration, but is now objecting to the Claimants' Motion for relief from the stay to compel arbitration.

Third, an independent arbitrator in this Chapter 11 case will certainly provide specialized expertise to help resolve these federal wage and hour and related issues. The Claimants' asserted claims, as noted earlier arise out of and deal with complex, non-bankruptcy law: wage and hour law. In the Claimants' Motion, they assert the following issues that must be determined: "a) Judgment that Debtor's admitted violation of the overtime pay provisions of the FLSA were willful; b) A determination of the hours [Claimants] worked during the relevant periods...; c) An award to [Claimants] for an amount equal to unpaid overtime premiums plus liquidated (double) damages; and d) An award of reasonable attorneys' fees and costs." (Claimants' Mot. Pg. 6). All of these issues arise out of non-bankruptcy law while the bankruptcy court specializes in issues arising under title 11, or arising in or related to a case until title 11.

Factors four and five are no longer relevant or applicable in this case. Factor four actually is moot. NPLH's Plan has been confirmed and implemented, with the exception of the arbitration issues involving the Claimants. The Chapter 11 Plan makes it clear that whichever process is chosen to adjudicate these matters (arbitration or judicial action), it will not interfere with the Plan. Those contingencies have further been provided for in the Chapter 11 Plan. Factor five is irrelevant. This case and proceeding do not involve international arbitration. Accordingly, this court proceeds now to the sixth factor.

Sixth, piecemeal litigation may be necessary in the instant case. The Supreme Court has stated that arbitration agreements should be enforced, even if it does result in piecemeal litigation as long as there is not an overriding policy in another federal statute. *Byrd*, 470 U.S. at 221, 105 S.Ct. 1238. The issues to be arbitrated are somewhat complex and specialized issues that primarily lie in non-bankruptcy law. The issues are wage and hour law claims arising out of the FLSA, not the Bankruptcy Code. Here, arbitration would provide the bankruptcy court and also the immediate parties a wider latitude than would be provided in bankruptcy in that the Claimants' claims relate to matters not covered under bankruptcy law and would be better adjudicated by someone who specializes in the complexities of wage and hour law. Issues resolved by the arbitrator would not then be re-litigated in front of the bankruptcy court. Unless the arbitration decisions are challenged procedurally, they will become final and not subject to any further review upon reaching the conclusion. If resolved in the bankruptcy court, the decision could be subject to possible appeals under 28 U.S.C. § 158 and further delays which would not promote the judicial goals set forth in FED. R. BANKR. P. 1001 (2016).

Seventh, the court reaffirms its prior discussion that the Claimants' claims indeed are technically core proceedings. However, this court's ultimate determina-

tion would not be any different if the claims were categorized as non-core proceedings. As stated by this court in the case of *B.J. Wade*, and other similar cases, the bankruptcy court has discretion to determine whether to compel or deny arbitration for issues within its jurisdiction. 523 B.R. at 598.

Eighth, and lastly, there will be little, if any, impact on the bankruptcy estate as a whole if these issues are allowed in arbitration rather than the bankruptcy court. The Chapter 11 Plan has been confirmed and resolution of these claims has already been factored into the Plan. Therefore, if removed to arbitration, it would not drastically effect the administration of the Chapter 11 case and estate nor the Plan's implementation or the rights of the other creditors. The claims to be adjudicated in arbitration are FLSA claims, vastly different than a traditional creditor's claim against the debtor's estate. There are no entangled bankruptcy issues in the Claimants' arbitration demands.

## CONCLUSION

Simply stated, allowing arbitration here would give the appropriate arbitration forum a chance to determine complex claims arising under non-bankruptcy law and efficiently accomplish via indirection the judicial goal set forth in FED. R. BANKR. P. 1001. For all of the aforementioned reasons and based on this entire case record as a whole, the court for cause grants the Claimants' "Motion to Lift Automatic Stay to Permit Arbitration of Claims."

Accordingly, based on the foregoing and consideration of the entire Chapter 11 case and the record as a whole, IT IS ORDERED AND NOTICE IS HEREBY GIVEN that:

1. The Claimants' § 362(d)(1) motion to modify the automatic stay to permit arbitration of their claims before an independent arbitrator is granted;

2. The Bankruptcy Court Clerk shall cause a copy of this Memorandum, Orders, and Notice of the entry thereof to be sent to the following interested entities: